LION OIL & REFINING COMPANY *v.* REX OIL COMPANY.

4-5021

Opinion delivered April 11, 1938.

1022

*Jeff Davis* and *J. A. O'Connor, Jr.,* for appellant.

*Henderson, Meek & Hall* and *Rowell, Rowell & Dickey,* for appellee.

GRIFFIN SMITH, C. J.   June 12, 1937, appellant and appellee entered into a contract whereby appellant agreed, for a consideration of $18,000, to purchase real and personal property owned by appellee in Jefferson county.

Appellant, although willing to perform, concluded that liens were outstanding against a part of the real property, and that such liens impaired the title.   Appellee sued for specific performance.

Although the record contains an abstract of many transactions involving title, for the purpose of this appeal it has been stipulated that the controversy to be determined is whether liens exist in favor of the state of Arkansas by virtue of proceedings adopted by the Commissioner of Revenues for collection of gasoline taxes alleged to have been due.

April 26, 1929, Rex Oil Corporation mortgaged certain Jefferson county real property to Equitable Building & Loan Association.   The mortgage secured an indebtedness of $2,500, and was duly recorded.

December 3, 1930, David A. Gates, Commissioner of Revenues, filed with the circuit clerk and recorder of Jefferson county a certificate of indebtedness against Rex Oil Corporation for $19,221.06. This certificate was issued and filed under authority of § 51 of act 65 of 1929, and it was recorded as required by law. Execution was promptly issued and returned *nulla bóna* December 15, 1930. May 29, 1931, judgment on the certificate was rendered by the Jefferson circuit court. No execution or writ of *scire facias* was issued on the judgment.

November 23, 1931, Equitable Building & Loan Association filed suit to foreclose its mortgage. David A. Gates as Commissioner of Revenues was made a party defendant and served with summons. March 17, 1932, there was a decree of foreclosure with default judgment in favor of the loan association for $2,050 and interest and cost, against Rex Oil Corporation. The decree recited that the plaintiff had a lien upon the property "prior and paramount to any right, title, claim, interest, or equity" . . . of the defendants.

At the Commissioner's sale November 9, 1932, Ellis Robbs purchased for $2,094.84. November 7, 1932, Robbs and wife executed their mortgage to Equitable Building & Loan Association to secure an indebtedness of $2,050. Appellant's answer alleges that this mortgage was given pursuant to an agreement between Robbs and the loan association that Robbs would purchase at the sale, and that no part of the purchase price was otherwise paid.

November 29, 1932, the Commissioner of Revenues filed a second certificate of indebtedness. It was for $11,484.96. No execution or *scire facias* was issued pursuant to the filing of such certificate.

February 10, 1934, Equitable Building & Loan Association assigned the Robbs mortgage to First Federal Savings & Loan Association of Little Rock. As further security Robbs and wife were required to execute an additional mortgage covering the same property. The latter mortgage, taken as renewal, remains unsatisfied.

By warranty deed of April 16, 1936, Robbs and wife conveyed the property to Rex Oil Company, "a new and

different corporation from the old theretofore dissolved Rex Oil Corporation.''

September 1, 1937, Rex Oil Company filed suit in Jefferson chancery court against D. L. Ford as Commissioner of Revenues, to which Ford, on behalf of the state, filed answer. A decree was rendered September 9. It recites findings of the chancery court in the case of *Equitable Building & Loan Association* v. *Robbs,* wherein it was found that the state's interests were barred. In the decree of September 9 there was a specific finding that the state's claims were barred through laches, and ''through limitations in not procuring a writ of *scire facias* or execution to collect or preserve its judgment, if it had any judgment, and . . . the defendant, D. L. Ford, Revenue Commissioner of the state of Arkansas, his successor, and the state of Arkansas, are estopped from claiming any lien by virtue of the judgments.''

Act 65 of 1929, under which the Commissioner of Revenues filed the certificates, provides that reports shall be made by manufacturers or wholesalers of gasoline. From these reports, subject to verification by audit, the Commissioner determines the amount of taxes due the state. Section 46 of the act directs that the tax, and penalty of 20 per cent., shall be collected by a civil action in the name of the state, to be brought by the Attorney General or the Commissioner of Revenues. ''Such action shall be held and construed to be an action in tort, and upon the filing of same, attachment may be issued against the property of the delinquent whether he be a resident or a nonresident . . . In case of attachment, the procedure prescribed by law in cases of actions on contract shall be followed, except that no bond shall be required of the state as a condition precedent to the issuance of the order of attachment.''

Section 51 of act 65 provides: ''The Commissioner of Revenues . . . shall certify the amount of said tax and penalty to the clerk of the circuit court of the county wherein the tax or any part thereof accrued, and it shall be the duty of the clerk to file such certificate of record and to enter the same in the circuit court for judgments

and decrees under the procedure for filing transcripts of judgments by §§ 6478 and 6480 of Crawford & Moses' Digest. Execution shall thereupon be issuable forthwith by the clerk of the circuit court directed to the sheriff who shall make a levy on any property, assets and effects of the manufacturer or wholesaler as the case may be against whom the tax is assessed . . . Provided, that any aggrieved manufacturer or wholesaler may appeal to the chancery court . . . for an injunction against the tax so levied.''

Sections 6478 and 6480, C. & M. Digest (now §§ 8440 and 8442 of Pope's Digest), referred to *supra,* provide: ''Every justice shall [give the judgment creditor] a certified copy of such judgment, and the clerk of the circuit court of the county in which such judgment was rendered shall . . . file the same in his office, and forthwith enter such judgment in the docket of the circuit court for judgments and decrees. . . . Every such judgment, from the time of filing the transcript thereof, shall be a lien on the real estate of the defendant in the county, to the same extent as a judgment of the circuit court of the same county.''

Section 8255 of Pope's Digest provides that judgments of the supreme, chancery, or circuit courts of the state shall be a lien on the real estate owned by the defendant in the county in which the judgment was rendered, and § 8256 limits such lien to three years, unless it is revived.

It is the opinion of a majority that §§ 8255 and 8256 of Pope's Digest, being §§ 1 and 2 of act 56 of 1891, should be read together and regarded as a statute creating a lien and declaring its term. The state, having invoked the aid of the circuit court in establishing its lien, is bound by the limitation. This construction follows in logical sequence of considerations presented. The state is the moving party exercising authority conferred by act 65. The liens are completed by investing ministerial acts of an executive officer with pre-existing statutory sanctions, mentioned *supra* as §§ 6478 and 6480 of Craw-

.ford & Moses' Digest, now appearing as §§ 8255 and 8256 of Pope's Digest.

In the absence of language in act 65 excepting the liens from the expirations provided for by § 8256, we do not think the General Assembly intended that they should not come within the purview of the statutory provisions to which they were so explicitly tied.

In the view that we have taken it is not necessary to decide whether suits in the chancery court, wherein the Commissioner of Revenues was made a party defendant, were suits against the state; nor do we pass upon the question of due process in the creation of liens under act 65.

The decree is affirmed.